UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

PAUL D.,[1]

        **Plaintiff,**

v.

FRANK BISIGNANO,[2]
**Commissioner of Social Security,**

        **Defendant.**

Case No. 3:23-cv-3322
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Paul D. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

1

I.      **PROCEDURAL HISTORY**

On September 23, 2019, Plaintiff filed his applications for disability insurance benefits and supplemental security income, alleging that he has been disabled since October 1, 2018. R. 163–64, 179–80, 293–99. The applications were denied initially and upon reconsideration. R. 181–201. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 202–06. ALJ Ricardy Damille held a hearing on October 26, 2021, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 117–46. The ALJ issued a partially favorable decision, dated March 18, 2022, and amended on April 27, 2022,[3] which concluded that Plaintiff became disabled within the meaning of the Social Security Act on December 11, 2021, and has continued to be disabled through the date of the ALJ's decision. R. 11–74. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on April 27, 2022. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 21, 2023, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 2.[4] On that same day, the case was reassigned to the undersigned. ECF No. 3. The matter is ripe for disposition.

II.     **LEGAL STANDARD**

   A.   **Standard of Review**

In reviewing applications for Social Security disability benefits, this Court has the

---

[3] The ALJ's decision was amended to correct an error regarding the disability onset date. R. 33. The Court will refer to the ALJ's amended decision, R. 33–48, dated April 27, 2022, throughout this *Opinion and Order*.

[4] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

2

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g) & 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is

5

disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

      **B.**      **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.   ALJ DECISION AND APPELLATE ISSUES

At step one, the ALJ found that Plaintiff[5] had not engaged in substantial gainful activity between October 1, 2018, his alleged disability onset date, and the date of the decision. R. 35.

At step two, the ALJ found that, since the alleged disability onset date of October 1, 2018, Plaintiff has suffered from the following severe impairments: glioma; status post resection; post surgery encephalopathy; cognitive impairment; depression; anxiety; asthma; and COPD. R. 36. The ALJ also found that Plaintiff's obesity and degenerative changes of the lumbar spine were not severe. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 36–38.

At step four, the ALJ found that, prior to the established disability onset date of

---

[5] Plaintiff was a younger individual, *i.e.*, less than 50 years old, prior to and after the established disability onset date of December 11, 2021. R. 36, 46; *see also* 20 C.F.R. §§ 404.1563(c), 416.964(c).

December 11, 2021, Plaintiff had the RFC to perform light work subject to various additional limitations. R. 38–43. This RFC precluded the performance of Plaintiff's past relevant work. R. 45.

At step five and relying on the testimony of the vocational expert, the ALJ found that, prior to the established disability onset date of December 11, 2021, a significant number of jobs– *e.g.*, jobs as a marker, a router, and a collator operator–existed in the national economy and could be performed by Plaintiff despite his lessened capacity. R. 46–47.

However, beginning on December 11, 2021, the ALJ found, Plaintiff's RFC was further reduced by the new non-exertional limitation of being off task 15% of the workday beyond normal breaks. R. 44–45. Again relying on the testimony of the vocational expert, the ALJ found that this reduced RFC would not permit the performance of any jobs in the national economy. R. 47.

The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from October 1, 2018, his alleged disability onset date, through December 10, 2010, but that he became disabled on December 11, 2021, and has continued to be disabled through the date of the decision. R. 47–48.

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 13; *Plaintiff's Reply Brief*, ECF No. 20. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 17.

IV.     SUMMARY OF RELEVANT MEDICAL EVIDENCE[6]

      A.     Marc Friedman, Ph.D.

On November 14, 2019, Marc Friedman, Ph.D., conducted a consultative mental status evaluation of Plaintiff. R. 601–04. Dr. Friedman noted that Plaintiff, who had been driven to the evaluation by his mother, was severely overweight and presented as poorly dressed and groomed. R. 601. Plaintiff reported undergoing surgery for a hernia repair several years prior to the evaluation and that "during the operation there was some problem with the anesthesia and he went in to a coma for five days." *Id*. Since that time, according to Plaintiff, his short-term and long-term memory had been "negatively affected[,]" he frequently had nightmares related to that incident, and he had experienced flashbacks and panic attacks. *Id*. He had been prescribed an anti-depressant but had changed to Xanax because of side effects. *Id*. Upon mental status examination, Dr. Friedman noted the following:

> He spoke using complete sentences. Speech was clear and understandable . Associations were logical and sequential and there were no signs of a thought disorder. The volume of speech was appropriate. Speech was goal oriented and relevant. He did make spontaneous comments. He did initiate and sustain conversation . He had little difficulty following the topic of a conversation. His eye contact was adequate during the interview. Mood was discouraged, and affect was constricted. He did not display a sense of humor. He is not reporting hallucinations, and his thinking does not appear to be delusional. He is not reporting suicidal ideation, or intent. He was unaware of the date, but he knew the location. In terms of longterm memory, he had some difficulty recalling specific dates of past events. He had little difficulty remembering some events from his childhood, teenage and adult years. He was able to recall the current president and the previous three presidents . He was unable to remember what he ate for lunch yesterday. In terms of short-term memory, he was able to remember 2 out of three objects after a three minute delay, and 2 objects after a five-minute delay. In terms of working memory, he was able to correctly repeat 4 digits and say 3 digits in reverse order. *He was*

---

[6] The ALJ also discussed several opinions from a treating physician, Deborah Neiman, M.D. R. 41–43. The parties dispute the persuasiveness of such opinions. *Plaintiff's Brief*, ECF No. 13, pp. 18–25; *Defendant's Brief*, No. 17, pp. 7–12; *Plaintiff's Reply Brief*, ECF No. 20, pp. 1–6. Because the Court resolves Plaintiff's request for review without deciding the merits of the parties' dispute as to Dr. Neiman, the Court does not address that physician's opinions.

9

> *unable to perform serial sevens correctly, and was very slow*. He was able to perform serial threes correctly. He had little difficulty concentrating on these tasks He was able to spell "WORLD" correctly, and backwards. He was able to calculate 6 times $.25, *and he was slow*. He had little difficulty with abstraction. Fund of information was OK. For example, he did know who Martin Luther King Jr. was, he did know where Brazil is located, and did know who wrote Hamlet. In terms of judgment, if he was the first person to notice a fire starting in a movie theater, he would yell. If he found a letter in the street addressed to someone else he would mail it. Based on his history I would estimate that his judgment is fair, and impulse control is fair. Overall intellectual functioning is estimated to be within the average range . He did appear to be trying his best during his problem-solving attempts. He is able to follow multi step directions. His persistence in completing tasks was adequate . Social interaction skills were adequate during the interview. *Long-term memory appears to be mildly impaired. Short-term memory appears to be mildly impaired. Working memory appears to be severely impaired*. Ability to concentrate was unimpaired.

R. 602–03 (emphasis added). Dr. Friedman described Plaintiff's activities and interests as follows:

> He wakes up any time between 9:30 AM and 5:00 PM, after getting a poor nights sleep. Appetite is reportedly variable. He will generally eat 1 regular meal/day. Daily hygiene is usually completed on an irregular basis. Frequently he does not bother to get dressed. He is currently living with his wife. In terms of routine household chores he is able to do simple food preparation, light cleaning and laundry. He is able to go shopping in the local area with his wife. He is able to travel independently by car for short distances. He is able to independently manage his money. In terms of hobbies or interests, he enjoys watching u-tube. He used to enjoy cooking but lost interest .In terms of social activity, he does have several friends that he might see once or twice a month. He usually goes to bed around 10:00 PM, and reports severe difficulty falling and staying asleep. He is bothered by frequent nightmares related to his hospital experience.

R. 603. Dr. Friedman made the following diagnosis and prognosis:

> Diagnosis : Based on the claimant's report, as well as on observations made during the interview, I would conclude that he is showing symptoms of a major depressive disorder, panic disorder and post traumatic stress disorder. During the interview he was able to communicate clearly and follow the topic of a conversation. His social interaction skills were adequate. He was able to comprehend and follow multi step directions. *His long-term memory appeared to be mildly impaired . Short-term memory appeared to be mildly impaired . Working memory appeared to be severely impaired* . Ability to concentrate was unimpaired during the interview.
>
> Prognosis is fair with outpatient psychiatric treatment. These conditions can be

10

expected to last at least one year.

*Id*. (emphasis added).

### B.     Jane Esposito, Psy.D.

On March 28, 2020, Jane Esposito, Psy.D., conducted a consultative examination. R. 637–41 ("March 2020 examination"). Plaintiff's wife had driven him to the evaluation. R. 637. According to Dr. Esposito, Plaintiff was taking Xanax, montelukast, Symbicort, omeprazole, and albuterol; Plaintiff reported that he cannot take his medications for depression because they cause tremors and "lack of sleep." *Id*. Plaintiff also reported, *inter alia*, that he "has some cognitive impairment" that he attributes to his brain tumor or to lack of sleep: "*he has no recollection of things,* [his] *short-term memory*[] *is very poor*, [ ] *he cannot remember names, he can't remember things that he has done.*" R. 638 (emphasis added). Dr. Esposito summarized Plaintiff's reported daily activities:

> The claimant stated that he tries to get up, that he sometimes is sleeping in the morning because he does not sleep at night. The claimant stated that he does take care of his cats. He does try to groom himself every day, that he does try to help with the chor.e [sic]. The claimant stated that he does try to do things spontaneously like going out, but that he becomes extremely anxious. The claimant does appear to be able to follow simple and multiple step directions.

R. 639. According to Dr. Esposito,

> [t]he claimant is a 38-year-old male whose wife drove him to this evaluation. The claimant is approximately 6 feet tall and appears to be of above-average weight. The claimant was well groomed. He did not demonstrate a thought disorder. The claimant demonstrated good eye contact. The claimant was able to speak in full sentences-. The claimant's mood was somewhat anxious and his affect was in full range. The claimant's short-term and long-term memory skills appeared [to] be adequate. The claimant's insight, judgment, and impulse control appeared to be adequate. The claimant's fund of general information appeared to be at least within the average range. The claimant could repeat digits forward and 2 digits backwards. The claimant could spell the word "world" both forward and backward. The claimant could indicate what the full date was and what town he was in. The claimant could do serial 7's. *The claimant had some difficulty repeating the 12 months of the year backwards. The claimant could repeat 3 items upon immediate*

11

> *recall, but only 1 item after a short delay.* At times, there did seem to be some difficulty completing these cognitive exercises.

R. 640 (emphasis added). Dr. Esposito's impression was as follows:

> 1. Rule out bipolar I disorder.
> 2. Post traumatic stress disorder.
> 3. Generalized anxiety disorder.
> 4. *Rule out mild neurocognitive disorder related to the brain tumor and subsequent coma*.

*Id*. (emphasis added).

On December 11, 2021, Dr. Esposito conducted another consultative examination and administered an intelligence test. R. 705–11 ("December 2021 evaluation"). Dr. Esposito noted that, while he demonstrated good eye contact, Plaintiff appeared to be anxious. R. 705, 708. He reported "an extremely poor" and "very weak" memory, emotional problems, fatigue, and problems with judgment. *Id*. His short-term memory skills had been getting worse: he needed constant reminders and lists. He had trouble expressing his thoughts, which can be "jumbled"; people had difficulty understanding him because of his stutter; he rated his depression and anxiety to be a 9. He was currently experiencing suicidal ideation, but had no intent to hurt himself. R. 705–06, 708–09. He lives with his wife and relies on her to handle everything. R. 706, 709. According to Dr. Esposito, Plaintiff "appear[ed] to be able to follow simple step directions, but multiple step directions may be difficult." R. 707; *see also* R. 709. Upon mental status examination, Dr. Esposito reported as follows:

> The claimant is a 40-year-old male who was driven to this evaluation. The claimant's mood was cooperative and his affect was in full range. The claimant did appear to be slightly anxious. The claimant's eye contact was good. The claimant did demonstrate some difficulty with his speech, at times he had difficulty getting his words out, at times he demonstrate some difficulty with his thought processing, that he will become confused. The claimant would have to ask this evaluator about the topic that he was talking about to get him back to task. He did appear to be very distractible. The claimant's insight, judgment, and impulse control appeared to be very poor. The claimant's fund of general information appeared to be extremely

12

> low. The claimant's receptive and expressive language skills appeared to be appropriate. The claimant could repeat 3 items upon immediate recall, but no items after a short of period of time. The claimant could not spell the word "world" both forward and backwards. The claimant could not state the 12 months of the year backwards. The claimant could recall what he had eaten the day before. The claimant could not answer simple general information questions. The claimant could repeat 4 digits forward and 3 digits backwards. The claimant could only sequence 2 numbers. Cognitive ability task, the claimant was administered the Wechsler Adult Intelligence Scale 4. The claimant did appear to have some difficulty and appeared to be getting a migraine toward the end of this evaluation. The claimant's full-scale IQ was measured to be 55, which is at the 0.1 percentile rank that falls within the extremely low range. Under verbal comprehension, he achieved a composite score of 61 at the 0.5 percentile rank, which falls in the extremely low range. Under perceptual reasoning scale, he achieved a composite score of 73 at the 4th percentile rank, which falls within the borderline range. Under working memory, he achieved a composite score of 55 at the 0.1 percentile rank, which falls within the extremely low range. Under processing speed, he achieved a composite score of 50 at the less than 0.1 percentile rank, which falls within the extremely low range. A general ability index was calculated, which is an optional composite score that is less sensitive to the influence of working memory and processing speed. He achieved a composite score of 61 at the 1 percentile rank, which falls within the extremely low range. Subtest; under verbal comprehension and similarities, he achieved a scaled score of 3 at the 1st percentile rank; under vocabulary, he achieved a scaled score of 3 at the 1 percentile rank; and on information, he achieved a scaled score of 4 at the 2 percentile rank. Under perceptual reasoning subtests on block design, he achieved a scaled score of 7 at the 16th percentile rank; under matrix reasoning, he achieved a scaled score of 5 at the 5th percentile rank; under visual puzzles, he achieved a scaled score of 4 at the 2nd percentile rank. Under the working memory subtest, on digit span, he achieved a scaled score of 2 at the 0.4 percentile rank; and under arithmetic, he achieved a scaled score of 2 at the 0.4 percentile rank. Under processing speed on symbol search, he achieved a scaled score of 1 at the 0.1 percentile rank; and on coding, he achieved a scaled score of 1 at the 0.1 percentile rank. The claimant did appear to have an area of strength and the area of perceptional reasoning, he could put blocks together and could figure out patterns at times and he definitely needs more time to process information. The claimant had great difficulty under some of the verbal tasks in terms of expressing himself. This does appear to be an accurate reflection of his cognitive abilities.

R. 709–10. Dr. Esposito's impression was mild neurocognitive disorder, bipolar 1 disorder, generalized anxiety disorder, substance abuse disorder (in full remission), and extremely low intellectual delay. R. 707, 711. Plaintiff's prognosis was characterized as guarded. R. 711.

Also on December 11, 2021, Dr. Esposito completed a one-page, check-the-box, and fill-

13

in-the-blank form entitled, "Psychological Test Validity Report" and stated, "Claimant was cooperative but became fatigued and got a migraine. Difficulty sustaining attention." R. 712.

## V. DISCUSSION

The ALJ determined that, during the period from Plaintiff's alleged disability onset date of October 1, 2018, until the established disability onset date of December 11, 2021, Plaintiff had the RFC to perform a limited range of light work:

> [P]rior to December 11, 2021, the claimant had the residual functional capacity to perform light work except he could occasionally climb ramps and stairs and never climb ladders, ropes and scaffolds. He could occasionally balance, stoop, kneel, crouch and crawl. He must avoid concentrated exposure to fume, odors, dust and gases. He was able to understand, remember and carry out simple instructions. He was restricted to work involving few work place changes, occasional decision making. He could have occasional interaction with supervisors, coworkers and the public (20 CFR 404.1567 and 416.967).

R. 38 ("RFC prior to December 11, 2021" or "RFC prior to the established disability onset date"). In crafting this RFC, the ALJ considered, *inter alia*, Dr. Friedman's November 2019 findings, and explained that, "overall, while the claimant does have some limitations, the physical and mental findings are *largely unremarkable* prior to December 2021." R. 42.

The ALJ went on to find that, beginning on the established disability onset date of December 11, 2021, Plaintiff

> has the residual functional capacity to perform a full range of light work except he can occasionally climb ramps and stairs but never climb ladders, ropes and scaffolds. He can occasionally balance, stoop, kneel, crouch and crawl. he must avoid concentrated exposure to fume, odors, dust and gases. He is able to understand, remember and carry out simple instructions. He is restricted to work involving few work place changes, occasional decision making. He can have occasional interaction with supervisors, coworkers and the public. *He would be off task for 15 percent of the work day above normal breaks.*

R. 43 ("RFC as of December 11, 2021" or "RFC as of the established disability onset date")

(emphasis added). In crafting the RFC as of December 11, 2021, the ALJ relied on Dr.

Esposito's December 2021 findings and report, explaining as follows:

> In reaching this conclusion, I find that beginning on the established onset date, the claimant's allegations regarding their symptoms and limitations are consistent with the evidence.
>
> After careful consideration of the evidence, I find that beginning on the established onset date, the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. The claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are consistent with the objective medical evidence and other evidence.
>
> During a December 2021 consultative examination with Jane Esposito, Psy.D, the doctor reported that the claimant appeared anxious but demonstrated good eye contact. The claimant reported to the doctor that he had extremely poor memory as well as emotional problems, fatigue and problems with judgment. The claimant also reported to the doctor that he had extremely poor short-term memory skills that was very difficult for him to follow directions. He indicated that his wife was no longer let[ting] him use the stove. He reported that he [has] difficulty expressing himself. He indicated that he had a history of depression his whole life due to child abuse as well as his medical condition. The claimant reported that he had migraines daily. The doctor indicated that it appeared that he was able to follow simple step directions but that multi step directions might be difficult.
>
> Mental status examination with Dr. Esposito indicated that the claimant had an anxious mood. Eye contact was adequate and he was able to speak in full sentences. She noted that at times the claimant had difficulty recalling what he was attempting to say and that he needed clarification. She also noted that he appeared to be quite distractible. Insight, judgment and impulse control appeared to be poor. General fund of information appeared to be very poor. She noted that the claimant was able to repeat three items upon immediate recall but no items after a short period of time. He could not answer very easy general information questions but he was able to repeat four digits forward and three digits backward. He could not sequence more than two numbers. He had great difficulty following directions. He could not spell the word "world" forward or backward and he could not state the 12 months of the year backwards. Short-term auditory memory skills appear to be impaired. The doctor diagnosed a mild neurocognitive disorder; bipolar I disorder; generalized anxiety disorder. The doctor noted the claimant had a history of substance abuse which was now in full remission (Exhibit l 4F).
>
> An additional examination from Dr. Esposito performed on December 11, 2021, indicated the claimant had an extremely low intellectual delay. The doctor based

> her finding on results of Wechsler Adult Intelligence Scale 4 testing. The doctor noted that the claimant appeared to have some difficulty and appeared to be getting a migraine toward the end of his evaluation. Full-scale IQ was measured to be 55 and fell within the extreme low range. Under verbal comprehension, he achieved a composite score of 51 at the 0.5 percentile rank. which falls into the extremely low range. Under perceptual- reasoning scale, he achieved a Composite Score of 73 at the 4th percentile rank, which falls within the borderline range. Under working memory, he achieved a composite score of 55 at the 0.1 percentile rank, which falls within the extremely low range. Under processing speed, he achieved a composite score of 50 at the less than 0.1 percentile rank, which falls within the extremely low range. A general ability index was calculated, which is an optional composite score that is less sensitive to the influence of working memory and processing speed. He achieved a composite score of 51 at the 1 percentile rank, which falls within the extremely low range. Subtest: under verbal comprehension and similarly, he achieved a scaled score of 3 at the 1st percentile rank; under vocabulary, he achieved a scaled score of 3 at the 1 percentile rank; and on information, he achieved a scaled score of 4 at the second percentile rank. Under perceptual reasoning subtests, on block design, he achieved a scaled score of 7 at the 16th percentile rank; under matrix reasoning, he achieved a scaled [score] of 5 at the 5th percentile rank; under visual puzzles, he achieved a scaled score digit of a second percentile rank. Under the working memory subtest, he achieved a scaled score of 2 at the .4 percentile rank; under arithmetic, he achieved a scaled score of 2 at the .4 rank. Under processing speed on symbol search, he achieved a scaled score of one at the 0.l percentile rank; and on coding, he received a scaled score of 1 at the 0.1 percentile rank. The claimant did appear to have an area of strength in the area of perceptional reasoning; he could put blocks together and could figure out patterns at times but he needed more time to process information. He had great difficulty under some of the verbal tasks in terms of expressing himself (Exhibit l 4F).
>
> I find that as of December 2021, the claimant's condition worsened. The consultative examiner noted worsening short term memory skills and the claimant reported a decline in mental cognition, which is also reflected in the record evidence.
>
> As for medical opinion(s) and prior administrative medical finding(s), I will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from [Plaintiff's] medical sources. I fully considered the medical opinions and prior administrative medical findings in your case.

R. 44–45.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). At the administrative hearing stage, it is the ALJ who is

charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Plaintiff argues that substantial evidence does not support the ALJ's RFC prior to December 11, 2021, because the ALJ failed to build a logical bridge for the finding that Plaintiff would be "off task for 15 percent of the work day above normal breaks"—and therefore disabled—as of December 11, 2021, but not prior to that date. *Plaintiff's Brief*, ECF No. 13, pp. 25–33. Plaintiff specifically argues, *inter alia*, that the record evidence undermines the ALJ's conclusion that Plaintiff's medical findings are "largely unremarkable" prior to December 11, 2021. *Id*. at 27–33 (citing R. 39) (internal quotation marks omitted). Plaintiff points to, *inter alia*, Dr. Friedman's November 2019 opinion that Plaintiff's working memory "'appeared to be severely impaired.'" *Id*. at 32 (quoting R. 41). The ALJ erred, Plaintiff argues, by failing to explain why the record evidence did not support a finding that Plaintiff would be off task for

17

15% of the workday prior to December 11, 2021, which was "the only dispositive factor between the award and denial of benefits." *Id*. at 33 (comparing R. 40 *with* R. 44).

For his part, the Commissioner does not specifically address Dr. Friedman's opinion that Plaintiff's working memory "appears to be severely impaired." *See Defendant's Brief*, ECF No. 17, pp. 9–10.

The Court concludes that this issue requires remand. As detailed above, Dr. Friedman opined, after conducting a mental examination, that Plaintiff's working memory was "severely impaired." R. 603; *see also United States v. Raiola*, No. 215CR106FTM38MRM, 2016 WL 11220474, at *4 (M.D. Fla. Dec. 21, 2016) (explaining that working memory is "a measure of an individual's ability to hold information temporarily in memory for the purpose of using that information to perform a specific task"), *report and recommendation adopted*, No. 215CR106FTM38MRM, 2017 WL 218830 (M.D. Fla. Jan. 19, 2017). Although the ALJ expressly noted Dr. Friedman's opinion in this regard, R. 42, the ALJ inexplicably stated that this consultative examiner "found no limitations with recall[,]" R. 43, and ultimately concluded that the "mental findings are largely unremarkable prior to December 2021." R. 42. Notably, nowhere in the ALJ's decision does he explain why Dr. Friedman's finding of an apparently "severely impaired" working memory does not amount to a limitation in Plaintiff's ability to recall or why the ALJ apparently characterized Dr. Friedman's finding in this regard as unremarkable. R. 38–43. This flawed reasoning thoroughly infected the ALJ's determination of Plaintiff's RFC prior to December 11, 2021, which did not include a limitation for any time off task. *Id*. *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (requiring that an ALJ's decision must contain "sufficient development of the record and explanation of findings to permit meaningful review"); *Cotter v. Harris*, 642 F.2d 700, 706–07 (3d Cir. 1981) ("Since it is

apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . [A]n explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted); *Bienkowski v. Bisignano*, No. 4:24-CV-1714, 2025 WL 1668328, at *7 (M.D. Pa. June 12, 2025) ("[A]s part of the ALJ's duty of articulation, the ALJ must establish a logical bridge between the evidence and the ALJ's legal conclusions and factual findings."); *Glenda M. v. Comm'r Soc. Sec.*, Civ. No. 22-03137, 2023 WL 6387515, at *6 (D.N.J. Sep. 29, 2023) ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [his] conclusions.") (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)); *Sanford v. Comm'r of Soc. Sec.*, No. CIV. 13-0366 NLH, 2014 WL 1294710, at *2 (D.N.J. Mar. 28, 2014) ("The Third Circuit has held that access to the Commissioner's reasoning is [ ] essential to a meaningful court review.") (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

The ALJ's failure in this regard takes on even greater significance when one considers that the vocational expert, upon whose testimony the ALJ relied, R. 46–47, testified that a claimant who is off task 15% of the workday above breaks would be unable to sustain employment. R. 142.

This Court therefore concludes that remand of the matter for further consideration of these issues is appropriate.[7] Moreover, remand is appropriate even if, upon further examination of Dr. Friedman's findings and the RFC prior to December 11, 2021, the ALJ again concludes

---

[7] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Friedman's findings and opinions and the RFC prior to December 11, 2021, the Court does not consider those assertions.
.

that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

## VI. CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date: September 10, 2025               *s/Norah McCann King*
                                        NORAH McCANN KING
                                   UNITED STATES MAGISTRATE JUDGE